3110483 Minerals Development and Supply Company v. Flexfrac Proppant Sand Suppliers, LLC Mr. Bradley, you may approach.  You're welcome. May it please the Court, I'm David Bradley of Peoria. I represent the appellant and plaintiff in this case, MDSC, more formally known as Minerals Development and Supply Company, Incorporated. The first issue I'd like to address is the standard of review, if I may. We believe the cases cited in the briefs clearly show that the manifest way of the evidence is the standard of review for findings of fact and the application of the law as to those facts, at least those properly found as de novo. Now, we as appellants only challenge one finding, and it's not really a finding of fact in the Court's final order. It's more of an equivocal commentary of the trial court where the trial court said, quote, It is entirely reasonable to conclude Flexfrac reps did not know that MDSC was an Illinois corporation. We believe that finding, if it is a finding of fact, is against the manifest way of the evidence. During the trial, or the one-day hearing, the president of MDSC testified that when he first met the president and vice president of Flexfrac, before all these crucial incidents took place, he gave them his business card. The business card was in evidence, clearly identified MDSC as an Illinois company. The officers of Flexfrac did not deny that. They sidestepped it. They said they didn't remember. The evidence showed that there were 34 emails sent to MDSC in Illinois from Flexfrac, and there were 30 to 35 telephone calls from Flexfrac officers to Illinois officers of MDSC, and those all went to the 309 area code, which of course is only in Illinois. Those communications only concerned the supply chain, which was the supply chain of the miner to MDSC. They would acquire this sand that is suited only for a fracking process. That would be sent down to Texas. It would be processed, and then it would be sold by Flexfrac. That was the supply chain. Mr. Torres, who was the vice president of Flexfrac, testified on the issue of whether he knew it was an Illinois corporation or not. In his affidavit, he said that he thought MDSC was a Texas corporation. In his live testimony, he said he thought MDSC was a Wisconsin corporation. Diametrically opposed. In any event, the trial court should have seen that as a red flag as to his testimony. During these incidents that are described in the complaints, and a little before that, Flexfrac president made an offer, who was also in the business of selling cars and trucks, made an offer to sell a truck to MDSC, sent a written offer to MDSC vice president in Illinois. After the final order was entered in this case, almost immediately Flexfrac sued MDSC in Texas. Of course, that was after our order was entered, so the trial court did not have the benefit of those allegations. They alleged that there was an oral contract between Flexfrac and MDSC, an Illinois corporation, in 2009, before this alleged breach of contract. All of these factors indicate that MDSC, or its officers, knew that Flexfrac knew that MDSC was an Illinois corporation. Finally, there was a confidentiality agreement, which was allegedly breached in the heart of this cause of action, and that reads, quote, supplier and recipient are discussing certain business transactions, including but not limited to the purchase and transfer of MDSC shares of the company. We suggest that it's just not credible that Flexfrac would discuss the purchase of MDSC shares of stock, not knowing that MDSC was an Illinois corporation. We believe that that finding of fact is important. We believe it was against the manifest weight of the evidence. Next, the state of Illinois does have jurisdiction under the long-arm statute. In 1989, the Illinois legislature amended the long-arm statute to have the catch-all provision that extended jurisdiction of Illinois courts to the extent permitted by the constitutions of the United States and the state of Illinois. Cases say that it's not necessary to have a presence in Illinois, a physical presence, to be subject to the jurisdiction of Illinois courts. Calder v. Jones and the Janmark cases make that clear. It's clear, we believe, that it's alleged in the complaint that Flexfrac committed a tort in Illinois, just as in Janmark. In Janmark, it was also an intentional interference with contract cases, one of the counts in our cases. In that case in Janmark, a defendant in California made a telephone call to an ultimate purchaser in New Jersey, and in that telephone call, with no presence in Illinois, committed a tort in Illinois because the injury was felt in Illinois. Now, this is not like the Green case or the anesthesiology mobile Chicago case, where the injury was felt in another state. In this state, MDSC had no presence in Texas. The injury was only felt in Illinois, where the tort occurred in Illinois. And next is the point of substantially connected, which is another subsection of the long-arm statute. Illinois courts here have jurisdiction over the cause of action because the contract was substantially connected with the state of Illinois. It was a contract to negotiate the purchase of 100% of the stock of an Illinois corporation, and it couldn't be more substantially connected with the state of Illinois. The state of Illinois has a vital interest in its corporations and the issuance of stock and the transfer of stock. We've cited cases for the proposition that the due process is the same under the United States and Illinois constitutions. I don't believe that's an issue anymore. And here, Fletch Frack intentionally committed a tort in Illinois to the same extent that the defendant did in the Calder v. Jones case, the Jan Mark case, and the Tamburo case. When a defendant commits a tort in the state of Illinois, that is where the injury was felt, and that satisfies the minimum context test and the due process test of the United States and Illinois constitutions. Are there any questions? Thank you. Mr. Spanos? Thank you, Your Honor. First, I'd like to say that I hope you enjoyed your trip back to the first week of law school for this case as much as I have. The Pennoyer v. Knapp, Burger King, and International Shoe. I'd like to start out responding to the two principal points that counsel has brought to your attention here in oral argument. One is stressing this knowledge issue about whether or not Fletch Frack – I'm sorry, let me step back. Forgive my lack of decorum. I'm Chris Spanos with Westerville, Johnson, Nicollin, Keller, and I represent the Appalachian. Fletch Frack, ProPants, ProPants, Sand Suppliers, Inc. And in two years, I can't say it right either. Counsel has focused on this knowledge issue, and I think we've cited to the court cases that establish that, first of all, even if there was knowledge that MDSC was an Illinois corporation, it doesn't matter. Counsel relies heavily on the Janmark decision with respect to where the effect of the tort is felt, and therefore where the tort takes place. We have cited to the court several cases, I think, that establish that that Janmark decision, while still technically good law, has been defined, declined, refused to follow. In fact, if the court does a search – we used to call it shepherdized, now it's the Westlaw search – you'll find that at least 22 cases have declined, have decided against it, have ignored it, have refused to rely upon it, because it just doesn't make sense if you think about what it says. And what counsel just said to you in argument is that if the effect of the tort is felt within the forum state, that's where the tort took place and that's where the court has jurisdiction. Makes no sense. If I drive my car today down to Texas and I'm injured by another driver in Texas who's a resident of the state of Texas, do I not feel the effect of that tort here in Illinois? Of course I do. Does my wife not feel that loss of consortium here in Illinois? Of course she does. I pay medical expenses here in Illinois. Maybe I miss work. Maybe I lose wages. All that's felt here in the state of Illinois. So if the test is simply, as counsel suggests, that the effect of the tort is felt within the forum state, I would suggest, it seems to me, that the state court would have jurisdiction over any tort, regardless of where it happened, as long as one of its citizens was involved. And that makes no sense. In fact, that's the cases that we cite, and principally if you look at the Mobile Chicago case, it gives you a far better analysis of what must take place to have jurisdiction within the forum. And it talks about the defendant must direct its conduct toward the forum state. It isn't simply that it's felt here, but that the conduct itself is directed towards the forum state. In this case, you have a supply chain that starts in Wisconsin and ends in Texas. It doesn't touch Illinois, the supply chain itself. More importantly, in this case, what we're talking about here is this confidentiality agreement. We're talking about a confidentiality agreement and a tortious interference with a contract. The contract that we're supposedly interfering with has nothing to do with the state of Illinois, except that the plaintiff resides in the state of Illinois. The raw material is mined in Wisconsin. The plaintiff is a middleman who then arranges for this material to be sold to an independent third party that's got nothing to do with this case. They reside in Texas. The ore is mined in Wisconsin. The person with whom the plaintiff has his agreement is in Wisconsin. So now Superior Sand, this independent third party, then has an agreement with my firm. Superior Sand processes this fracked sand, turns it into a usable product that my client then sells to end users in Texas. Oil and gas refineries. None of that process has anything to do with the state of Illinois, except that the plaintiff resides in Illinois. Now frankly, I don't think my client's knowledge of the plaintiff being in Illinois is really relevant to this consideration, but to the extent that the court may consider that, or at least still wonder, it seems to me one of the points that he raises is the fact that my client, who the president of FlexFrac, his real business is auto dealerships in Texas. During the conversation, somewhere along the lines, this is in the record, one of the employees of the plaintiff says, hey, I need a car. So my client apparently sends him a bid. Now, just because he sends that bid to a guy who lives in Illinois, and remember, it's not the MDSC that's buying the car, it's the individual, as I understand it, just because he lives in Illinois doesn't mean that the corporation is in Illinois. Now, there's some issues about the business cards, and both the people from my client that testified said they may or may not have gotten a card, they don't remember. But as far as the manifest weight of the evidence standard goes, clearly there's enough evidence to support that conclusion, if in fact it is a conclusion of fact. Regardless, even if you believe, okay, maybe they did know it was Illinois, let's look at all the other things that the court says as a matter of fact, finding a fact that's entitled to deference. My client had never entered the state of Illinois, no one from my client ever entered the state of Illinois prior to the hearing in this matter. They transacted no business in the state of Illinois. I think that's a factual finding that's entitled to deference. It goes on. Signing the confidentiality agreement and emailing it to a computer in Illinois. Well, that's a great question, Your Honor, but what the court found at the trial level was that number one, it was MDSC and not my client who requested the contract, it was MDSC who prepared the contract, it was MDSC who signed the contract and then sent it to my client in Texas for execution in Texas. The substance of the contract, if you focus on that, what is the substance of that contract? You will not disclose my secrets in Texas because frankly the only people who care about those secrets are, well, Wisconsin or Texas, and really it's Texas. So the performance of that contract, one of the things that we talk about in our brief about what the court should consider when determining whether or not a contract gives rise to jurisdiction, the performance of that contract is really in Texas. MDSC makes a disclosure of information. Sure, they're standing in Illinois, but they could have been anywhere when they picked up the phone and disclosed that information to my client in Texas. There really is no connection to Illinois but for the fact that they reside in Illinois. The deal has nothing to do with Illinois. The deal goes on the same way regardless of where the plaintiff rests, where the plaintiff puts its hat or spends its evenings. It has nothing to do with the entire transaction. If gentlemen gather in Illinois and sign a contract in the presence of everybody in Illinois and then perform the contract in Texas or in Wisconsin, is that sufficient ties to Illinois, the formation of the contract? Your Honor, it may well be, but those are not the facts in this case. I know, I know. But it is undisputed that the confidentiality agreement was signed by, I think Mr. Torres, and emailed to Illinois. It would not have been effective until received in Illinois. I think it's effective once my client signs it. Because now you have two parties who have signed it. Well, you have to find out that the other guy signed it somehow. I suppose. But it's simply passing knowledge. That's what I'm wondering. And I don't think it is, Your Honor. Because two days later there was a conference call. Placed by MDSC. But apparently requested by Mr. Adams. Now, if you read the questioning, the actual questioning in the record, and plaintiff cites to the page, my question, and I said to him, So did you schedule a conference call? And the answer is, we scheduled a conference call. So me and my poor questioning at the trial level, I asked him, you as a general, did you all do it? And it could certainly be read as, did you, Andy, did you schedule that conference call? But his response is very clear and unequivocal. We scheduled a conference call. Now when he says we, he could be talking, and I believe he was talking about not only him and Mr. Torres, but also the plaintiff. Okay. And that's the way the question is answered. Thank you. You're welcome. Thank you. With respect to the other thing that I think we need to keep in mind, what happens in this case is because we have a tort, and we have a contract, we have different tests, different standards, then we have the whole long-arm statute test, and then when we get through with that, I think we may seem like, well, maybe we've got jurisdiction here. But before you do that, before you make that decision now, you have to move on to the due process question and go through that list of inquiries as to whether or not it makes sense, whether it's fair play to require a flex fractor to come to Illinois to defend this action. And the first thing that stands out in my mind is that the way this thing  to facilitate a contract not between MBSC and my client, but between my client and this independent third party. Remember, the only contract between the two of them, that's signed by the two of them, is this confidentiality agreement. Otherwise, it's a series of contracts. We're on one end, he's on the other. More importantly, all of the witnesses to this case, except for the plaintiff, reside in Texas, possibly Wisconsin. Mostly in Texas. This is a Texas issue. It really doesn't have anything to do with the mining. It has to do with the selling. I think if you look at the burden that would be placed upon flex frac to come to Illinois and bring independent third party witnesses to Illinois to testify on their behalf with respect to this alleged disclosure of information, it's a great burden on flex frac. Go through and look at the forum state's interest in this. Well, the state of Illinois really has a minimal interest in this ordeal, if any. Because this whole chain, this whole business transaction, is not taking place within the state of Illinois. I suppose you could go and make some kind of reaching arguments that says, well, maybe my client's going to pay taxes in the state of Illinois, or not my client, but the plaintiff would pay taxes and so on. But I don't think those are the sorts of state interests that are going to overcome the burden on the defendant to defend this case here and the interest of the state of Texas. Where all this stuff is happening, where the oil is taken out of the ground, where the product is sold, all this is happening in Texas. Now, sure, the plaintiff has an interest in convenience and the efficiency of having his dispute or its dispute resolved. But the reality there is that he's reached out of Illinois, entered into a transaction outside the state of Illinois, and should reasonably expect that if there's a problem with that transaction outside the state of Illinois, it should be adjudicated outside the state of Illinois. So when the court takes a step back after looking at the contract issue, looking at whether or not the flex frac has directed this activity towards the state of Illinois, which I don't think there's any evidence that it did. In fact, Judge Gilfillan found that it had not. And then if you get past that, if you have to go on to the due process argument, I think you find that there's not due process in this case. There's certainly a huge burden on the flex frac to come to Illinois. Thank you. And I will answer any further questions the court might have at this point. I have one. On page 9 of Appellant's brief, they request us to take judicial notice of a petition filed in Texas. Do you have a position on that? Or maybe you didn't see it? I don't have it. I've never been involved with it. I don't think it's necessarily appropriate for this court to take notice of it because frankly it's something that happened after the fact and has absolutely nothing to do with it. I didn't see that you addressed that point in your brief and I just wanted to get your position. I did not. So you would be opposed to us taking judicial notice of something the trial court didn't know existed? I would have had no idea that it was going on. Obviously it didn't happen until after the trial court had decided. It seems to me, Your Honor, that that's not something this court should notice when considering whether or not the trial court made the right decision before that occurred. Any other questions? Thank you. Thank you very much. Mr. Radley? On the first point that Mr. Spanos made, that's the question of knowledge. We feel as though there is some importance. It's not crucial to the case. It's not necessarily determinative of the case, but we think that the issue of knowledge is important in this case. And that point was driven home to us when the appellee cited the case of Tamburo in his brief. And that's a case where, as I recall, the complaint brought in Illinois alleged a Canadian defendant and an Australian defendant committed several intentional torts, and I believe there was a patent violation or infringement cause of action, too. And the result of that case, as I recall, is that the Canadian defendant was found subject to Illinois jurisdiction because the Canadian defendant did have knowledge that the plaintiff was an Illinois corporation. On the other hand, as I recall, the court let the Australian defendant off the hook and said Illinois does not have jurisdiction over the Australian defendant because he didn't even know the residents or anything about the plaintiff, didn't have knowledge of its location. So we believe that point is important. Next, the analogy of driving down in Texas, getting into an automobile accident, is really not analogous to this at all because if you're in an automobile accident, the injury is felt where the impact occurs, obviously. In the Green case, Illinois Supreme Court said that since the plaintiff had a subsidiary in Texas and the injury was felt in Texas, the fact that there were repercussions in Illinois is not significant. We believe that that's all consistent with our case. It's where the injury occurs. It's not necessarily where the effects are felt because the injury might occur in one place and the effects might be felt in another place. There's only one state where the injury could have occurred in this case, and that's the state of Illinois. On the point of the offer to sell a truck while this was all going on, that's in our appendix. It's page 30 of our appendix, and the truck offer was made to MDSC. It was not made to an individual.  It's on the issue of knowledge. The issue of convenience is really kind of a tie. We have two witnesses in Illinois, two witnesses in Texas. Those are the four witnesses that testified at our day-long hearing. The superior witness, the testimony was that he was long gone from Texas, probably in Wisconsin, last we've seen there. And therefore, on the issue of convenience, I don't believe the defendant can make a case for Texas being a more convenient forum than Illinois. As far as the state interest in the outcome of this case, the state interest in negotiations for 100% of the stock of an Illinois corporation, we believe that speaks for itself, that Illinois has a vital interest in that issue. Any questions? Thank you. Thank you. Thank you for your arguments today. We'll be taking the matter under advisement and also taking a short break.